UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GMO TRUST, on behalf of GMO      )
EMERGING COUNTRY DEBT FUND,      )
                                 )
              Plaintiff,         )    CIVIL ACTION NO.
                                 )    12-10293-DPW
                                 )
         v.                      )
                                 )
ICAP PLC, INTERCAPITAL           )
SECURITIES LLC, ICAP             )
SECURITIES LIMITED, EXOTIX       )
LIMITED, and EXOTIX USA,         )
INC.,                            )
                                 )
              Defendants.        )

MEMORANDUM AND ORDER
October 18, 2012

Plaintiff GMO Trust brings claims on behalf of GMO Emerging Country Debt Fund against certain securities brokers for breach of contract and violation of Mass. Gen. Laws ch. 93A, § 11, based on failure to deliver Venezuelan oil warrants, which GMO Emerging Country Debt Fund purchased in May 2002.[1]  Defendants ICAP plc and ICAP Securities Limited move to dismiss for failure to state a claim against them, Fed. R. Civ. P. 12(b)(6).  Defendants Exotix and Exotix USA separately move to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and for lack of personal

---

[1]  The GMO fund is managed by Grantham, May, Van Otterloo & Co. LLC, a Boston-based global investment management firm. Compl. ¶ 3.  I refer to the GMO entities collectively as "GMO."

-1-

jurisdiction, Fed. R. Civ. P. 12(b)(2) (Dkt. No. 33).   No
appearance has been filed for Defendant Intercapital Securities
LLC, which was dissolved in 2010.

## I. BACKGROUND

### A.   *Factual Background*

In 1990, Venezuela began issuing bonds as part of a debt
restructuring to help finance the development of the country's
oil industry.   Compl. ¶19.   The bonds were issued with
accompanying warrants for Venezuelan oil obligations, which
provided for the possibility of semi-annual payments, beginning
in 1996, indexed to the price of oil.   Compl. ¶¶ 19-20.   The
payments could total as much as $3.00 per warrant, and were
designed to provide lenders with a partial recovery of value lost
in the debt restructuring--contingent upon Venezuela's ability to
service its national debt through an increase of revenue from oil
sales.   Compl. ¶ 20.   For a time, the warrants held little value,
given the low price of oil, and a substantial number of bonds
were traded without accompanying warrants.   Compl. ¶ 21.
However, in 2005 the Venezuelan government began making payments
on the warrants, which are scheduled to continue through April
2020.   Compl. ¶ 20.

GMO negotiated a trade for Venezuelan bonds and the
accompanying oil warrants with Joseph Boyle, a broker at
Intercapital Securities LLC (then known as Garban Securities

LLC).  Compl. ¶ 29.  On May 30, 2002, GMO purchased two blocks of
bonds with a total face value of 15 million Deutsche Marks, along
with the corresponding 71,430 warrants.  Compl. ¶ 22.  Settlement
instructions were entered into the trading settlement system
Euroclear.  Compl. ¶ 27.  The warrants were to be delivered to
GMO's custodian bank in Boston.  Compl. ¶ 24.  On the agreed
settlement date of June 4, 2002, however, GMO received the bonds
but not the warrants.  Compl. ¶¶ 27-28.

     At the time of the transaction, Intercapital Securities LLC,
ICAP Securities Limited, and Exotix Limited were subsidiaries of
ICAP plc. Compl. ¶¶ 5-8.  Exotix Limited is a broker dealer
specializing in illiquid, distressed and undervalued securities,
as was Intercapital Securities LLC prior to its dissolution in
2010.  Compl. ¶¶ 5, 9.  ICAP Securities Limited is a stockbroker,
securities intermediary and broker dealer, active in emerging
markets.  Compl. ¶ 7.  In 2007, ICAP plc sold at least some of
its stake in Exotix Limited, but still describes Exotix Limited
as an "associate company."  Compl. ¶ 8.  Exotix USA, formed in
early 2007, is a broker dealer specializing in illiquid,
distressed and undervalued securities, and is a subsidiary of
Exotix Limited.  Compl. ¶ 9.

     All of the defendants are implicated in this action through
the interactions between GMO and Joseph Boyle.  The "trade
ticket," which confirmed the transaction GMO negotiated with

Boyle, listed Boyle as affiliated in some manner with Exotix Limited.  Compl. ¶ 29.  GMO alleges, on information and belief, that ICAP plc and Intercapital Securities LLC regularly used the Exotix Limited trade name and goodwill to market securities in the United States.  Compl. ¶ 29.  The trade ticket also indicates that "[ICAP] SECURITIES LTD . . . SELLS TO GMO" the Venezuelan bonds and warrants, Compl. ¶¶ 23, 29, and identifies the ICAP Securities Limited Euroclear account as the account through which the parties would settle the trade.  Compl ¶ 23.

After failing to receive the warrants, GMO regularly contacted Boyle for status updates and to request delivery.  Compl. ¶31.  Boyle explained that "we" were working with a separate counterparty—what he called "Exotix's" counterparty—to obtain the warrants. Compl. ¶¶ 30, 31.  GMO claims it understood Boyle to be acting on behalf of all the ICAP/Exotix entities.  Compl. ¶ 31.

In February 2005, Boyle re-entered—or at least caused to be re-entered—settlement instructions in the Euroclear system, again on the ICAP Securities Limited account.  Compl. ¶ 32.  The warrants, however, remained undelivered.  Boyle asked for patience, explaining that the unavailability of warrants was an industry-wide problem.  Compl. ¶ 35.  GMO alleges, however, that Boyle was offering warrants to others on the market as early as October 2006.  Compl. ¶ 36.

In March 2008, Boyle became the CEO, COO, and CCO of Exotix USA.  Although he notified GMO about the change in his email address, he gave no indication that his new position had any substantive import.  Compl. 38.  Boyle continued to refer to the defendants interchangeably with respect to the trade, and held them out as, effectively, a single entity.  Compl. ¶ 39.

In September 2009, Boyle again agreed to re-enter settlement instructions in the Euroclear system.  The warrants, however, remained--and remain--undelivered.  Compl. ¶ 40.  GMO estimates that, as of the time of the complaint, payments on the undelivered warrants total at least $3.35 million, and that the warrants themselves are valued at over $1.85 million.  Compl. ¶ 49.

## B.  *Procedural History*

GMO filed this action in February 2012.  Rather than respond to an initial round of motions to dismiss by the ICAP and Exotix defendants, GMO amended its complaint in May 2012.  The present motions to dismiss followed.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  "'Naked

assertion[s]' devoid of 'further factual enhancement'" do not constitute adequate pleading. *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007)). All well-pleaded factual allegations in the complaint must be taken as true and all reasonable inferences must be drawn in the pleader's favor. *SEC* v. *Tambone*, 597 F.3d 436, 441 (1st Cir.2010) (en banc). Unless the alleged facts push a claim "across the line from conceivable to plausible," the complaint is subject to dismissal. *Iqbal*, 556 U .S. at 680.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff must "proffer[] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit* v. *Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). This "*prima facie* showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." *Id.* (internal quotations and citations omitted). I must "not credit conclusory allegations or draw farfetched inferences," *Ticketmaster-New York, Inc.* v. *Alioto*, 26 F.3d 201, 203 (1st Cir. 1994), but must "accept[] properly supported proffers of evidence by a plaintiff as true," *Boit*, 967 F.2d at 675.

### III. ANALYSIS

Both motions to dismiss argue that the defendants are improper parties to this suit. The Exotix defendants argue that

personal jurisdiction is lacking; the ICAP defendants say GMO has engaged in improper "group pleading." Although styled differently, both reduce to arguments that these defendants had no role in the transaction at issue, which occurred entirely between GMO and Intercapital Securities LLC, through its employee Joseph Boyle. The defendants also argue that, even if they are proper defendants to this suit, the breach of contract and 93A claims are time-barred, and also that GMO has failed to state a 93A claim.

## A.    *Agency Relationship*

GMO alleges that Boyle, or Intercaptical Securities LLC, was an agent with actual or apparent authority to bind any and all of the defendants as principals to the May 2002 trade, *see Medeiros* v. *Middlesex Ins. Co.*, 716 N.E.2d 1076, 1080 (1999) ("the contractual act of [an] agent has the same legal effect as if done by the principal and makes the principal the actual party to and obligor of the undertaking"), and who for years continued to make representations on behalf of all the defendants regarding his attempts to obtain the warrants for GMO. Given that Boyle's relationship with the various defendants is central to the propriety of their presence in this suit, I first examine the adequacy of GMO's allegations as to the alleged agency relationship between Boyle and the various defendants, which will facilitate resolution of the specific arguments for dismissal.

1.  <u>Standards</u>

Agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *Kirkpatrick v. Boston Mut. Life Ins. Co.*, 473 N.E.2d 173, 176 (Mass. 1985).  Apparent authority, meanwhile,

> results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent . . . .  If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.

*Linkage Corp.* v. *Trustees of Boston Univ.*, 679 N.E.2d 191, 203 (Mass. 1997)(internal quotation marks omitted, modifications in original)(citing *Hudson v. Mass. Prop. Ins. Underwriting Ass'n*, 436 N.E.2d 155, 160 (Mass. 1982)).

As to pleading an agency relationship, it is clear that allegations of "common ownership and leadership, standing alone, are not sufficient." *Dodora Unified Communications, Inc.* v. *Direct Info. Pvt. Ltd.*, 379 F. Supp. 2d 10, 13 (D. Mass. 2005). That said, "[r]esponsibility for another's actions is not a matter as to which particularity in pleading is required." *N. Am. Catholic Educ. Programming Found., Inc.* v. *Cardinale*, 567 F.3d 8, 17 (1st Cir. 2009).

2.  <u>Exotix USA</u>

There can be no dispute that, as an officer of Exotix USA,

-8-

Boyle acted as its agent.  *Fay* v. *Noble*, 66 Mass. 1 (1853)
(corporate "officers shall be taken to have the authority which
their designations ordinarily imply").

    3.  <u>Exotix Limited</u>

    GMO attempts to establish an agency relationship between
Exotix Limited and Boyle primarily based on the use of the Exotix
trade name by Boyle and Intercapital Securities LLC.  Compl.
¶ 29.  GMO trader Madelyn Tucker affirms that she understood
Boyle to be acting on behalf of Exotix Limited in agreeing to the
trade.

    GMO references, for example, the trade ticket for the May
2002 transaction, Compl. ¶ 29, which shows that the name
associated with one of Boyle's email addresses is "JOSEPH BOYLE,
EXOTIX LIMITED."  The ticket also lists "TRDR:JOSEPH BOYLE>EXOTIX
LIMITED."  Boyle himself also affirms that the Intercapital
Securities LLC New York Desk "was sometimes referred to as
'Exotix' or the 'Exotix Desk.'"  In communications following the
trade, Boyle also discussed contacting "Exotix's" counterparty,
and stated that "we" are working to secure delivery of the
warrants.  Compl. ¶ 31.

    GMO says its allegations make it plausible that Boyle had
authority to act on behalf of Exotix Limited, or some joint
enterprise between Intercapital Securities LLC and Exotix
Limited, or at least that GMO reasonably believed Boyle had such

authority.  I agree.  The allegations show that Boyle had at least apparent authority to trade in Exotix Limited's name, which legitimately raises the specter of what else Boyle may have been authorized to do.

Exotix Limited argues that the allegations of apparent authority must fail, relying on *Theos & Sons, Inc.* v. *Mack Trucks, Inc.*, 729 N.E.2d 1113 (Mass. 2000), for the proposition that apparent authority cannot be based solely on an alleged principal authorizing use of its trade name.  Putting aside that *Theos* was dismissed on summary judgment, not a motion to dismiss, GMO convincingly distinguishes the case.  *Theos* dealt with a truck service dealer using the trade name of the truck manufacturer.  While no reasonable third party could infer an agency relationship in that circumstance, it is plausible that one might understand an agency relationship or joint enterprise between two corporate affiliates performing exactly the same services.

Undoubtedly, GMO's position is weakened by the fact that it is a sophisticated business entity.  But fully resolving this issue requires a more robust factual understanding of the relationship between Exotix Limited and Boyle/Intercapital Securities LLC, as well as what sort of information was available to GMO when it negotiated this and other trades with Boyle.

4.   ICAP Securities Limited

The alleged agency between Boyle and ICAP Securities Limited is largely based on the allegation that the trade ticket, provided by Boyle, listed ICAP Securities Limited as the seller in the transaction.  Compl. ¶ 23.  GMO thus took Boyle to be acting on behalf of ICAP Securities Limited in arranging the trade.  Additionally, GMO alleges that Boyle played at least some role in entering and re-entering settlement instructions into the Euroclear account belonging to ICAP Securities Limited.  Compl. ¶¶ 23, 33.[2]

ICAP Securities Limited again argues that the allegation of apparent authority is particularly tenuous.  Unlike the allegations against Exotix Limited, GMO does not allege any conduct *by the principal* that would support Boyle's apparent authority.  True, GMO has not alleged any affirmative signals from ICAP Securities Limited to GMO that Boyle was acting on its behalf.  But, given the alleged close relationship among the ICAP/Exotix entities and their trading activities, the complaint as a whole captures a factual scenario in which all of the defendants were aware of each others' trading activities, and GMO understood the defendants to be working from a background

_____

[2] Boyle represents that only the owner of Euroclear account is authorized to issue instructions.  But, if GMO understood that Boyle had authority to enter the instructions, this only supports the argument that GMO also reasonably understood Boyle to possess some authority to act on behalf of ICAP Securities Limited.

presumption of, if not formal agreement to, a joint trading
enterprise.  *See Linkage Corp.* v. *Trustees of Boston Univ.*, 679
N.E.2d 191, 204 (Mass. 1997) (principal may "be bound if the
principal acquiesces in the agent's action").

The allegations are again somewhat thin, but, as earlier
mentioned, great specificity is not required in alleging an
agency relationship.  There is enough here beyond a bare
allegation of corporate affiliation to allow GMO to probe further
the relationship among Boyle, Intercapital Securities LLC, and
ICAP Securities Limited.

   5.  ICAP plc

The complaint contains virtually no specific allegations
regarding the relationship between Boyle and ICAP plc.  Most
elaboration comes in GMO's opposition to the motions to dismiss
and accompanying declarations.  For example, GMO points to the
Financial Industry Regulatory Authority's "BrokerCheck" report on
Intercaptial Securities LLC, on which Intercaptial Securities
answered "yes" to the question whether ICAP plc "direct[s] the
management or policies" of Intercapital Securities.  GMO also
represents that one of the email addresses Boyle used to
communicate with GMO had the domain name "@us.icap.com."  ICAP
plc responds that its email domain name is simply "icap.com,"
without "us" in the domain name.

In any event, these quibbles again reflect that the question of agency is largely factual and better reserved for disposition on summary judgment.   Although specific allegations as to the agency relationship between Boyle and ICAP plc are lacking, the complaint taken as a whole raises enough questions about whether Boyle was acting on behalf of some sort of joint enterprise--again, actual or apparent--to keep ICAP plc in the action at this stage.

**B.   *Personal Jurisdiction (Exotix Defendants)***

Exotix Limited is London-based, Compl. ¶ 8, and Exotix USA is a Delaware corporation with its principal place of business in New York, Compl. ¶ 9.   They argue that they lack sufficient contacts with Massachusetts to support personal jurisdiction.

To establish personal jurisdiction over the Exotix defendants, GMO must satisfy the requirements of the Massachusetts Long Arm Statute, Mass. Gen. Laws ch. 223A § 3, and the constitutional requirements of due process.   *Good Hope Industries, Inc.* v. *Ryder Scott Co.*, 389 N.E.2d 76, 79 (Mass. 1979).   That said, these inquiries are for the most part co-extensive because the Long Arm Statute asserts jurisdiction to the constitutional limits.   *Id.*

Due process requires that a defendant "have certain minimum contacts with [the forum of suit] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'"  *Int'l Shoe Co*. v. *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).  Under the "purposeful availment" requirement, a defendant must have "deliberately" created a "substantial connection" with the forum state.  *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985).

Personal jurisdiction can be general or specific.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *United Elec. Workers* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992).  "Specific personal jurisdiction, by contrast, is narrower in scope and may only be relied upon 'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" *Pritzker* v. *Yari*, 42 F.3d 53, 60 (1st Cir. 1994) (quoting *United Elec. Workers*, 960 F.2d at 1088–1089).

When allowing a claim to proceed on specific jurisdiction, the court must also ensure that requiring the out-of-state defendant to defend in the forum is consistent with the so-called "gestalt factors."  *N. Am. Catholic Educ. Programming Found., Inc*. v. *Cardinale*, 567 F.3d 8, 16 (1st Cir. 2009).  The "gestalt factors" include

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and effective
> relief, (4) the judicial system's interest in obtaining the
> most effective resolution of the controversy, and (5) the
> common interests of all sovereigns in promoting substantive
> social policies.

*Cossaboon* v. *Maine Med. Ctr.*, 600 F.3d 25, 33 (1st Cir. 2010).

### 1.  Exotix Limited

GMO's allegations of personal jurisdiction over Exotix Limited all involve actions taken by Boyle, allegedly on behalf of Exotix.

As already discussed, GMO has pled adequately--albeit by only a small margin--an agency relationship between Boyle and Exotix Limited, and actions by an agent can subject the principal to personal jurisdiction.  *See* Mass. Gen. Laws Ann. ch. 223A, § 3 (permitting personal jurisdiction when relevant contacts with Massachusetts carried out "directly or by an agent"); *United Elec., Radio & Mach. Workers of Am.* v. *163 Pleasant St. Corp.*, 960 F.2d 1080, 1090 (1st Cir. 1992) ("[W]e remark the obvious: the contacts of a corporation's agent can subject the corporation to personal jurisdiction.").  Accordingly, I cannot act on the Exotix Limited motion to dismiss for want of personal jurisdiction until further factual development of the alleged agency relationship is complete.  As I explain below, however, if that factual development leads to an adequate showing of agency, I will deny the motion.

The complaint contains nothing more than conclusory allegations as to general jurisdiction over Exotix Limited. *E.g.*, Compl ¶ 8 (Exotix Limited "conducts business internationally, including in Massachusetts").  Without more specific allegations of Exotix Limited's contacts with Massachusetts unrelated to the suit, GMO has failed to make the required prima facie showing of general jurisdiction.[3]

If Boyle was an agent of Exotix Limited, GMO has adequately alleged that Exotix Limited availed itself of the Massachusetts market.  Specific jurisdiction is assessed claim-by-claim, *Phillips Exeter Acad.* v. *Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999), but Boyle is the central figure in both the contract dispute and the alleged deceptive acts.

Asserting personal jurisdiction over Exotix Limited would also be consistent with the "gestalt factors."  Any burden imposed on Exotix Limited by having to appear in Massachusetts is outweighed by Massachusetts' interest in protecting in-state investment funds like GMO, and the efficiency of resolving this matter together with GMO's claims against the ICAP defendants, who

---

[3] Boyle says he began working with GMO in 1999 or 2000, and continued working with them through his time at Exotix USA.  If Boyle was an agent of Exotix Limited, these years of transacting business in Massachusetts would go a long way toward establishing personal jurisdiction.  But, as it stands, the course of conduct remains vague and, in any event, Boyle's declaration does not enrich the conclusory allegations of the complaint on this point.

do not dispute the propriety of having been haled into court in Massachusetts.

### 2.   Exotix USA

GMO's allegations as to general jurisdiction over Exotix USA are similarly conclusory.  Compl. ¶ 9.  Specific jurisdiction with regard to the 93A claim would be appropriate, given that Boyle's alleged misrepresentations continued while he was employed at Exotix USA; but, as discussed in Part III.E below, I am dismissing the 93A claim on other grounds.

The remaining allegation of breach of contract against Exotix USA also fails to state a claim.  Given that Exotix USA did not even exist until 2007, it cannot have been a party to the 2002 transaction.  The complaint does not allege that the re-entry of settlement instructions by Boyle in 2009 constituted a new contract with new consideration, but rather was merely an acknowledgment of existing debt.  There is thus no allegation of an event post-dating the formation of Exotix USA that could have imposed obligations on Exotix USA with respect to delivery of the warrants to GMO.  Exotix USA says this means it cannot be subject to jurisdiction, but the deficiency is really one of failure to state a claim.  In any event, the result is the same:  the breach of contract claim must be dismissed as to Exotix USA.

All of that said, GMO may continue to argue that Boyle's seamless transition to Exotix USA helps to establish his apparent

authority to act on behalf of ICAP- or Exotix-affiliated entities other than his immediate employer.

## C.   *Improper Group Pleading (ICAP Defendants)*

The ICAP defendants argue that GMO has engaged in improper "group pleading," which is apparently their shorthand way of saying that GMO has not provided adequate notice of the claims against them.  *See Holmes* v. *Allstate Corp.*, No. 11 CIV. 1543 LTS DF, 2012 WL 627238, at *7-10 (S.D.N.Y. Jan. 27, 2012).  According to the ICAP defendants, the complaint fails to set forth "minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción* v. *Hernández*, 367 F.3d 61, 68 (1st Cir. 2004).

### 1.  ICAP Securities Limited

ICAP Securities Limited cannot claim that the complaint leaves it with insufficient notice of the claim against it.  The complaint gives clear notice of the central allegation: that ICAP Securities Limited was the counterparty to GMO in the trade. Compl. ¶¶ 23, 29.  GMO has made a sufficient showing to support the allegation at this point.  The trade ticket explicitly says "[ICAP] SECURITIES LTD . . . SELLS TO GMO" the Venezuelan bonds and warrants.  Of course, it remains to be determined whether the trade ticket accurately reflects a binding obligation on the part of ICAP Securities Limited.  Equally uncertain is whether Boyle himself bound ICAP Securities Limited to any such obligation, or

if he even had authority--apparent or actual--to do so.  But the injury of which GMO complains, and the alleged role of ICAP Securities Limited in causing that injury--as the alleged counterparty that failed to deliver the warrants--is entirely clear.

ICAP Securities Limited responds by presenting an agreement reflecting that it was merely a clearing broker to Exotix Limited.  Even if I can credit this agreement at the motion to dismiss stage, and even if it applied to the transaction at issue, it is not inconsistent with an allegation that ICAP Securities Limited also had independent obligations to GMO. Moreover, the agreement merely provides another potential theory of liability: that GMO is a third-party beneficiary to the clearing agreement between ICAP Securities Limited and Exotix Limited.  The ICAP defendants argue that English law--which governs the contract--will not recognize GMO as a third-party beneficiary, but the case cited by ICAP, *Avraamides* v. *Colwill* [2006] EWCA Civ. 1533, is far from clear on this point. Dismissal of the claims against ICAP Securities Limited on these grounds would be premature.

2.  ICAP plc

As earlier discussed, the allegations against ICAP plc are fairly generic, but not so vague that ICAP plc can claim it lacks sufficient notice of the claim.

The claims against ICAP plc are, for example, a far cry from those in *Holmes* v. *Allstate Corp.*, No. 11 CIV. 1543 LTS DF, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012), the main "group pleading" case cited by ICAP.  *Holmes* involved claims against Allstate based on promises made by one of its licensed insurance agents, Harris.  At issue were promises Harris made in his capacity as principal of entirely distinct entities and regarding matters having nothing to do with insurance, *Holmes*, 2012 WL 627238, at *10.  In addition, the claims against Allstate were premised exclusively on apparent authority.  *Id.* at *8.  The implausibility of claims against Allstate in such a situation was patent.

Here, there are legitimate allegations that all of the ICAP and Exotix defendants worked as a unified front in their trading activities, and that Boyle worked as an agent of that enterprise. The allegations against ICAP plc are thin but, viewed in the context of the complaint as a whole, not entirely implausible.[4]

## D.    *Breach of Contract - Statute of Limitations*

Both sets of defendants argue that GMO's breach of contract claim is time-barred.  There is a six-year limitations period for

---

[4] Intercapital Securities LLC was also required, upon dissolution, to make provisions for satisfying claims against the company likely to arise within 10 years of dissolution.  Del. Code Ann. tit. 6, § 18-804(b)(3).  As the parent entity, ICAP plc seems most likely to be responsible for executing whatever provisions were made, but this issue, of course, will require factual development.

contract actions in Massachusetts, Mass. Gen. Laws ch. 260 § 2, measured from the date of breach.  *Berkshire Mut. Ins. Co.* v. *Burbank*, 664 N.E.2d 1188, 1189 (Mass. 1996).  Measured from the initial failure to deliver the warrants in June 2002, the filing of this action in February 2012 would be clearly untimely.

GMO, however, relies on Mass Gen. Laws ch. 260, § 13, which tolls the statute of limitations upon an "unqualified acknowledgment of [a] debt . . . or an unconditional promise to pay [a] debt," in a writing signed by the debtor.  *Epstein* v. *Seigel*, 485 N.E.2d 947, 948 (Mass. 1985).[5]  GMO argues that the re-entry of settlement instructions by Boyle in 2005 and 2009, providing for delivery of the same warrants in the same amount as the original transaction, constitutes the necessary acknowledgment to remove its contract claim from the statute of limitations pursuant to M.G.L. ch. 260, § 13.

I agree.  Boyle's personal requests for patience and statements about attempting to secure warrants for delivery likely "amount only to a conditional promise to pay when the promisor is able," *Gill* v. *Gibson*, 114 N.E. 198, 198 (1916), which would not

---

[5] M.G.L. ch. 260, § 13, provides in full:

No acknowledgment or promise shall be evidence of a new or continuing contract whereby to take an action of contract out of the operation of this chapter or to deprive a party of the benefit thereof, unless such acknowledgment or promise has been made by, or is contained in, a writing signed by the party chargeable thereby.

toll the limitations period.   However, the written instructions in
the Euroclear system as to the undelivered warrants constitute an
"unqualified acknowledgment of present indebtedness."  *Wenz* v.
*Wenz*, 110 N.E. 969, 970 (Mass. 1916).   Measured, then, from the
most recent alleged re-entry of settlement instructions in 2009,
GMO brought its contract claim well within the limitations
period.[6]  Applying a provision of New York law analogous to M.G.L.
ch. 260, § 13,[7] one court has found that the re-entry of
settlement instructions--in a case also involving Venezuelan oil
warrants--tolled the statute of limitations.   *See Ellington Long*
*Term Fund, Ltd. v. Goldman, Sachs & Co.*, No. 09 CIV. 9802 RJS,

---

[6]Technically, the renewed limitations period should run from
whatever new settlement date was set by the new Euroclear
instructions.  *Sergros Caracas de Liberty Mut., S.A.* v. *Goldman,
Sachs & Co.*, 502 F. Supp. 2d 183, 188 (D. Mass. 2007).   GMO says
the most recent settlement date was July 1, 2009.   Compl. ¶ 40.
But this seems unlikely given that the instructions allegedly
were not even entered until September 2009.   *Id.*   It is of no
consequence, however, given that the claim is timely by either
measure.

[7]The requirements for an acknowledgment tolling the
limitations period under the New York statute are strikingly
similar to those under M.G.L. ch. 260, § 13:

> An *acknowledgment or promise contained in a writing signed*
> *by the party to be charged thereby* is the only competent
> evidence of a new or continuing contract whereby to take an
> action out of the operation of the provisions of limitations
> of time for commencing actions under the civil practice law
> and rules other than an action for the recovery of real
> property. This section does not alter the effect of a
> payment of principal or interest.

N.Y. Gen. Oblig. Law § 17-101 (emphasis added).

2010 WL 1838730, at *4 (S.D.N.Y. May 4, 2010).  I share that view.

The defendants, of course, argue that none of *them* acknowledged the debt because Boyle was the exclusive point of contact with GMO regarding re-entry of the settlement instructions.  But, as already discussed, resolving such questions--regarding the nature and extent of Boyle's capacity to act on behalf of the ICAP and Exotix defendants--must await further factual development.

**E.   Chapter 93A Claims (All Defendants)**

In addition to its claim for breach, GMO alleges that the defendants engaged in unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A, § 11.  The defendants argue that GMO fails to state a claim, and that the claim is time-barred.

Claims under M.G.L. ch. 93A, § 11, must be brought within four years of accrual of the action.  Mass. Gen. Laws. Ch. 260 § 5A; *Prescott* v. *Morton Int'l, Inc.*, 769 F. Supp. 404, 407 (D. Mass. 1990).  The claim accrues when "the plaintiff knew or should have known of the alleged injury."  *Lambert* v. *Fleet Nat. Bank*, 865 N.E.2d 1091, 1097 (2007).

To the extent GMO's 93A claim is based on unfair or deceptive acts that occurred prior to entering into the May 2002 transaction, the claim is time-barred.  For example, GMO alleges that the defendants entered into the transaction with reckless disregard as to their ability to deliver, Compl. ¶ 49, that they

failed to disclose prior to the trade that they would not be able to obtain the warrants, Compl. ¶ 50, and failed to disclose that they would not pursue reconciliation in good faith, Compl. ¶ 51. Absent these deceptions, GMO says it might have decided not to enter into the transactions.

The first failure to settle the trade, however, occurred in June 2002, and this action was not filed until almost 10 years later. True, there were re-entries of settlement instructions in 2005 and 2009. But the first re-entry was followed by further delivery failure and, by GMO's own allegation, the fact that in October 2006 Boyle began offering warrants to others on the market. That is the very last point at which one can say GMO was reasonably unaware it might have had a claim as to the defendants' alleged initial deception, and still leaves this action outside of the four-year limitations period.[8]

To the extent that GMO bases its 93A claims on Boyle's allegedly false assurances *following* the initial delivery

---

[8] At the hearing on these motions, GMO argued that M.G.L. ch. 260, § 13, operates to toll the statute of limitations not only for its breach of contract claim but also its 93A claim. Consistent with the plain language of § 13, it is generally understood that such rules regarding acknowledgments and new promises apply only to contractual claims, with the narrow exception of "quasi-contract" actions historically sounding in assumpsit. *See generally* 4 Williston on Contracts § 8:35 (4th ed. 2012); 31 Williston on Contracts § 79:95 (4th ed. 2012). As discussed below, to the extent the 93A claim is premised merely on a breach of contract it fails to state a claim. To the extent the 93A claim is legitimately premised on additional tortious activity, GMO cannot benefit from tolling under § 13.

failure--for example, that he was working to secure delivery and was merely waiting on another counterparty, Compl. ¶ 49--GMO fails to state a claim.  Such misrepresentations did not cause GMO any additional harm beyond continuing failure to receive the warrants, which is merely the breach of commercial obligation already addressed by GMO's contract claim and not cognizable under chapter 93A. *Framingham Auto Sales, Inc.* v. *Workers' Credit Union*, 671 N.E.2d 963, 965 (Mass. App. Ct. 1996) ("[M]ere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under [chapter 93A]."); *cf.* *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (1995) (requiring additional coercion beyond mere breach to establish 93A violation).  GMO has thus failed to show that any post-transaction misrepresentations caused cognizable injury.  *See Hershenow* v. *Enter. Rent-A-Car Co. Of Boston, Inc.*, 840 N.E.2d 526, 528 (Mass. 2006) (93A claim requires "proving a causal connection between a deceptive act and a loss").

Although these reasons suffice to support dismissal of  GMO's 93A claim, the claim has at least one more flaw:  the allegations simply to do not rise to the level of unfair and deceptive practices contemplated by the statute.  In the often-quoted formulation, the alleged "objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings* v.

*Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. 1979).  The Massachusetts Supreme Judicial Court has disavowed phrases like "level of rascality" as "uninstructive," *Massachusetts Employers Ins. Exch.* v. *Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (1995); *accord Cambridge Plating Co., Inc.* v. *Napco, Inc.*, 85 F.3d 752, 769 (1st Cir. 1996) (citing *Propac-Mass*).  The point remains, however, that to establish a violation of chapter 93A, "the defendant's conduct must be not only wrong, but also egregiously wrong."  *Massachusetts Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998).  Boyle's alleged refrain of "we're trying, please be patient" was at best true, mostly likely equivocation, and at worst an untruth--and even then, as earlier discussed, an untruth with consequences no worse than the simple breach of the commercial obligation itself.[9]

---

[9] The defendants also argue that the allegedly deceptive acts and practices did not occur "primarily and substantially within the commonwealth," as required by M.G.L. ch. 93A, § 11. True, it may weigh in favor of the defendants that the veracity of Boyle's statements turns on activity occurring outside of Massachusetts--namely, whether the various defendants, in New Jersey or London or in dealing with other parties around the world, were in fact working in good faith to secure delivery of the warrants. *Cf. Ezenia! Inc.* v. *Datacraft Mexico*, S.A., 033390, 2004 WL 3091658, at *2 (Mass. Super. Nov. 23, 2004).  But, as GMO points out, all of the cases on which defendants rely involved deceptions sent from outside into the commonwealth regarding transactions also involving delivery or performance elsewhere. *E.g.*, *Ezenia!*, 2004 WL 3091658 (Mexico); *Goldstein Oil Co.* v. *C.K. Smith Co., Inc.*, 479 N.E.2d 728, 731 (Mass. App. Ct. 1985) (Rhode Island).  Here, not only were all of the allegedly deceptive communications sent into Massachusetts, but also performance--delivery of the warrants to GMO's custodian bank-- was meant to occur in Massachusetts, and thus the harm from the

**F.   *Intercapital Securities LLC***

Although Intercapital Securities LLC does not appear amenable
to suit following dissolution, Del. Code Ann. tit. 6, § 18-803(b),
I take no additional action regarding the LLC at this time.
Formal dismissal of the company from this matter must await
discovery as to the relationship among the various defendants,
which may yield useful information as to a designated successor in
interest to the company--at which point some other party may be
substituted as a defendant--or other provisions can be made to
address the consequences of winding up the entity.

## IV. CONCLUSION

To summarize briefly: the 93A claim is dismissed as to all
defendants, and the breach of contract claim is dismissed as to
Exotix USA.  The breach of contract claim remains as to defendants
ICAP plc, ICAP Securities Limited, Intercapital Securities LLC,
and Exotix Limited.

For the reasons set forth more fully above, the ICAP
defendants' motion to dismiss the amended complaint (Dkt. No. 30)
is GRANTED IN PART and DENIED IN PART, and the Exotix defendants'

---

deception would be felt in the commonwealth.  *Cf. Makino, U.S.A.,
Inc.* v. *Metlife Capital Credit Corp.*, 518 N.E.2d 519, 524 (Mass.
App. Ct. 1988).  Accordingly, were it not for the various other
defects in GMO's 93A claim, I would find that a "preponderance of
the wrongful conduct occurred in Massachusetts."  *Makino*, 518
N.E.2d at 524.

motion to dismiss the amended complaint (Dkt. No. 33) is GRANTED

IN PART and DENIED IN PART.


**_/s/ Douglas P. Woodlock_**
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE